UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **INSITE PLATFORM PARTNERS, INC. et al.,** | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:19-cv-00250 ) ) |
| **COMTECH MOBILE DATACOM CORP.,** | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiffs Insite Platform Partners, Inc., North American Satellite Corporation, and Richard Humphrey (collectively, the "Plaintiffs") brought this action against Defendant ComTech Mobile Datacom Corporation ("ComTech"), asserting claims for breach of contract and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Pending before the Court is ComTech's Motion for Summary Judgment (Doc. No. 64). Plaintiffs filed a response (Doc. No. 68) and ComTech filed a reply (Doc. No. 71). For the following reasons, ComTech's motion will be granted.

**I. BACKGROUND**

The SkyTracker is a product that, using satellite technology, monitors the fuel levels of propane tanks. (Doc. No. 65 at 2). Plaintiff North American Satellite Corporation ("NASCorp") and its CEO, Richard Humphrey ("Humphrey"), developed the SkyTracker. (Id.). Plaintiffs contracted with Defendant ComTech to design and manufacture one version of the product, the "SkyTracker III." (Id.). Between December 2009 and December 2012, the parties were subject to an original manufacturing agreement. (Id.; Doc. No. 1 at ¶¶ 22-23), but on June 25, 2013, that agreement was superseded by the "Contract Settlement Modification" agreement (the "2013

Agreement"). (Doc. Nos. 14-2; 69 at ¶ 8). The 2013 Agreement contained a broad release provision. (Doc. No. 14-2 at 2). In light of the release provision, the Court has previously ruled that "any conduct prior to June 25, 2013 has been waived and discharged by virtue of" the 2013 Agreement. (Doc. No. 35). Accordingly, the Court dismissed all but two counts brought by Plaintiffs in this case: 1) breach of contract of the 2013 Agreement; and 2) false designation of origin under section 43(a) of the Lanham Act as to the use of trademarks (Doc. Nos. 1, 35).

Once the terms of the original contract manufacturing agreement expired in 2012, the parties agreed to go their separate ways and entered into the 2013 Agreement to formally "wrap up" their business relationship. (Doc. No. 65 at 4). The crux of the breach of contract dispute is ComTech's alleged obligation, under the 2013 Agreement, to "release all SkyTracker III engineering drawings and related information to NASCorp . . . [; to] provide written notice to all subcontractors involved in the manufacture of SkyTracker units and authorize the subcontractors to work with NASCorp directly upon the execution of this agreement"; and "to purchase all of ComTech's remaining inventory of SkyTracker IIIs." (Doc. Nos. 65 at 4; 69 at 2). Plaintiffs believe that ComTech violated this obligation in several respects. ComTech contends that it shipped all relevant files in July 2013, and, even if it did not, the purpose of the engineering release provision was simply to instruct ComTech's previous subcontractors—Advanced Assembly and Sinotech— to begin working with Plaintiffs on the next batch of SkyTracker IIIs. (Doc. No. 72 at ¶ 16). On July 24, 2013, it is undisputed that ComTech authorized both of its subcontractors to work with Plaintiffs. (Doc. No. 69 at ¶ 14). After signing the 2013 Agreement, Plaintiffs made eight separate payments totaling $130,840.00, (Id. at ¶ 19), allegedly without airing any grievances about the incompleteness of ComTech's shipment. ComTech counterclaimed that Plaintiffs breached the 2013 Agreement by failing to pay various amounts due, including failure to purchase all remaining

2

ComTech inventory. (Doc. No. 18 at ¶¶ 24-26). That issue is not before the Court on summary judgment.

Plaintiffs also claim false designation of origin under Section 43(a) of the Lanham Act. (Doc. No. 1 at ¶¶ 80-86). Specifically, Plaintiffs argue that ComTech manufactured, sold, and/or provided monthly monitoring services for unauthorized or pirated SkyTracker III units. (Doc. No. 68 at 9). Plaintiffs, specifically Humphrey, believe ComTech created a "shadow group" called "North American Satellite" in order to "masquerade" as NASCorp. (Id. at ¶¶ 70-80). Humphrey further argues that ComTech did so in cahoots with a political syndicate based in Goodlettsville, TN known as the "Gang of Twenty." (Id.). ComTech argues that Plaintiffs have provided no evidence that unauthorized SkyTracker units ever existed. ComTech notes that Plaintiffs even admitted to having never seen such units in the stream of commerce. (Doc. Nos. 65 at 17; 69 at ¶¶ 68-69). ComTech has now moved for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Griffith v. Franklin Cty., 975 F.3d 554, 566 (6th Cir. 2020) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

## III. ANALYSIS

Plaintiffs assert claims for breach of contract and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Court will discuss each of these claims below.

### A. Breach of Contract

Plaintiffs begin by arguing that ComTech violated its obligations under the 2013 Agreement in four ways: (1) failing to provide engineering deliverables following payment and following NASCorp's request (Doc. No. 1 ¶ 54c); (2) failing to provide SkyTracker units (Id. ¶ 54d); (3) failing to provide documents needed to resolve a billing dispute between the parties (Id. ¶ 54e); and (4) continuing to build, fabricate and/or assemble unauthorized SkyTracker hardware, firmware, and/or monitoring units (Id. ¶ 54g). ComTech counters that it shipped all relevant files in July 2013, and, even if it did not, the purpose of the engineering release provision was simply to instruct ComTech's subcontractors to begin working with Plaintiffs to build more SkyTracker IIIs. (Doc. No. 72 at ¶ 16). As an initial matter, Plaintiffs abandon all but the first of their arguments. "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." Brown v. VHS of Mich., Inc., 545 F. App'x 368, 372 (6th Cir. 2013) (citing Hicks v. Concorde Career Coll., 449 F. App'x 484, 487 (6th Cir. 2011)).

4

Plaintiffs' Response in Opposition to ComTech's Motion for Summary Judgment addresses only the claim that ComTech failed to provide the requisite engineering deliverables. (Doc. No. 68 at 4-9). Accordingly, ComTech is entitled to summary judgment on all other breach of contract claims.

To establish a claim for breach of contract in Tennessee, a plaintiff must prove: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of contract, and (3) damages caused by a breach of contract." BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006); see also Life Care Ctrs. Of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, LPIMC, Inc., 79 F.3d 496, 514 (6th Cir. 1996) (reciting the elements for a breach of contract claim under Tennessee law). Here, the parties do not dispute the existence of an enforceable contract, namely the 2013 Agreement. Rather, the dispute is over whether ComTech sufficiently performed by providing the requisite engineering deliverables. (Doc. Nos. 65 at 17-18; 68 at 4-9).

Plaintiffs argue that ComTech failed to provide all of the engineering files by withholding software and hardware engineering in its shipment to NASCorp. (Doc. No. 68 at 4). Plaintiffs rely upon the testimony of SkyTracker developer, Richard Humphrey, in arguing that ComTech's shipment failed to include the disc containing the required engineering files. (Id.). Plaintiffs further note that Pia Miranda, who oversaw ComTech's alleged shipment of engineering files, testified that "she was confident ComTech made two shipments to NASCorp" rather than one, thereby justifying Plaintiffs' claim that the disc at issue was not included. (Doc. No. 68 at 5).

ComTech counters that it fulfilled its obligations under the 2013 Agreement. (Doc. No. 65 at 4). First, ComTech claims that at least ten of its employees collected the required engineering deliverables, loaded them onto a disc, and sent the disc to Plaintiffs on July 2, 2013. (Id.). Plaintiffs

5

concede that they received a shipment on that date but deny that a disc with the engineering files was included. (Doc. No. 69 at 6). ComTech further argues that regardless of whether Plaintiffs received the disc, ComTech nonetheless satisfied its obligations by releasing its subcontractors responsible for manufacturing the SkyTracker III—Advanced Assembly and Sinotech—to work freely with Plaintiffs. (Doc. No. 65 at 5). ComTech argues that shortly following the release of its subcontractors to Plaintiffs, it exited the satellite tracking business and Plaintiffs went several months without complaint. (Id.).

Plaintiffs further argue that two of its external firms, CES and Execution Analytics, reviewed the engineering deliverables sent by ComTech, and informed Plaintiffs that the deliverables were insufficient. (Doc. No. 68 at 5). Plaintiffs additionally argue that because it had to obtain a certain type of file, the X/Y files, from Advanced Assembly rather than ComTech, that there is a factual dispute over whether ComTech actually released all the files directly to Plaintiffs. (Doc. No. 68 at 4-5). ComTech counters that Plaintiffs do not dispute whether ComTech's subcontractors, including Advanced Assembly, were in possession of all the engineering files necessary to manufacture SkyTracker IIIs. (Doc. Nos. 69 at ¶ 14; 71 at 3). Thus, ComTech argues, because it released its subcontractors to work freely with Plaintiffs, the subcontractors had access to all requisite engineering files, and Plaintiffs continued to manufacture and sell SkyTracker IIIs after the alleged breach of the 2013 Agreement. Moreover, ComTech argues that Plaintiffs, through their liaison, Tim Slifkin, could have obtained all requisite engineering files when redesigning the new SkyTracker product; however, they chose not to. (Doc. No. 65-11; 72 at ¶ 84). Thus, there is no dispute of fact as to whether ComTech satisfied its obligations under that agreement. (Doc. Nos. 71 at 3; 69 at ¶¶ 13-16, 36-37, 54).

After reviewing the record in the light most favorable to Plaintiffs, the Court concludes that a reasonable juror could not find that ComTech failed to perform under the 2013 Agreement. This follows from Plaintiffs' factual admissions. First, Plaintiffs concede that ComTech sent a shipment, including a test fixture and its components, as well as a laptop computer with various files, on July 5, 2013. (Doc. No. 68 at 4). Second, Plaintiffs admit that at least ten separate employees were responsible for gathering the requisite engineering files and placing them onto a disc to be sent to Plaintiffs. (Doc. No. 69 at ¶¶ 9-10). Third, Plaintiffs' reliance on Pia Miranda's knowledge of the shipments is undercut because "she had no firsthand knowledge of how shipment [of the engineering files] ultimately occurred." (Doc. No. 71 at 3; see also Doc. No. 68-17 at 10, Miranda Dep. Tr. 37:9-15). And Ms. Miranda recants her prior statement of two shipments; instead, she now says, "it is my current belief that the DVD . . . contained all the engineering files that I helped gather, meaning those files were sent in the same shipment as the test fixture" that Plaintiffs admitted receiving. (Doc. No. 71-1 at ¶ 29). Rich Harer, ComTech's Facilities Security Officer and Productions Manager, corroborates Ms. Miranda. (Doc. No. 65-7 at ¶ 8). He noted that he and Ms. Miranda were "tasked with packaging and mailing in one package all items collected, including (i) a disc containing the engineering files gathered by Ms. Miranda and the engineering department and (ii) a test fixture." (Id. at ¶ 8). And fourth, most tellingly, Plaintiffs admit to amending the 2013 Agreement in October 2013 without mentioning any failure by ComTech whatsoever in providing the requisite engineering documents. (Doc. No. 69 at ¶ 20).

However, notwithstanding Plaintiffs' factual admissions, the death knell of its breach of contract claim is that ComTech released its subcontractors, including Advanced Assembly, to work freely with Plaintiffs. (Doc. No. 69 at ¶¶ 15-16). And there is no dispute that ComTech's subcontractors, including Advanced Assembly, were in possession of all the engineering files

7

necessary to manufacture SkyTracker IIIs. (Doc. Nos. 69 at ¶ 14; 71 at 3). Further, it is undisputed that Plaintiffs requested from Advanced Assembly, and received, the X/Y files initially alleged to be missing from ComTech's shipment. (Doc. No. 72 at ¶ 48).

Plaintiffs also do not deny having "never objected" to the allegedly incomplete nature of the engineering files it received on July 5, 2013. (Doc. No. 69 at ¶ 18). Although Plaintiffs "object" to the categorization of that fact, claiming that it emailed ComTech seeking information about a battery count reset, that email did not contain a request for engineering files. (Id. at ¶¶ 12, 18-19). Plaintiffs only claimed that they were "continuing to review" what items it had received from ComTech—not that such items were incomplete. (Id. at ¶ 18). Plaintiffs could have engaged with ComTech's now-released subcontractors to acquire any remaining engineering deliverables. Indeed, Plaintiffs received one such file from Advanced Assembly. (Doc. No. 72 at ¶ 48). Yet, Plaintiffs admitted to hiring a completely separate subcontractor—CES rather than Advanced Assembly—to embark on the subsequent manufacturing venture. (Id. at ¶ 28).

The Court concludes on this record that ComTech shipped the relevant engineering deliverables to Plaintiffs in July 2014. Whatever dispute there may be about the contents of that shipment is not material, as ComTech fully released its subcontractors—who had access to all of the engineering files—to freely work with Plaintiffs. That Plaintiffs failed to avail themselves of those subcontractors in producing additional SkyTracker IIIs does not, in turn, impose liability on ComTech. Thus, having extensively reviewed the record in the light most favorable to Plaintiffs, the Court finds that ComTech is entitled to summary judgment on its breach of contract claim because there is no genuine dispute of material fact as to whether ComTech performed its obligations to deliver the requisite engineering deliverables under the 2013 Agreement.

## B. FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

Plaintiffs next argue that ComTech violated the Lanham Act by: 1) manufacturing, selling, and/or providing monthly monitoring services for unauthorized, or pirated, SkyTracker III units; and 2) using NASCorp's word marks to confuse "the public into believing that its pirated remote tank monitors are" the same as the ones NASCorp has been producing under the SkyTracker name since 2005. (Doc. No. 1 at ¶¶ 80-86). ComTech argues that Plaintiffs have provided no evidence that it, or anyone else, was involved in a scheme to pirate SkyTracker units. (Doc. No. 65 at 17).

"The Lanham Act covers trademark infringement as well as a host of other deceptive practices that might loosely be termed 'unfair competition.'" Johnson v. Jones, 149 F.3d 494, 501 (6th Cir. 1998). Section 43(a) of the Act protects against one such form of unfair competition, known as false designation of origin. The Act imposes liability on "any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A).

To establish a claim for false designation of origin, a plaintiff must show a "likelihood of confusion." Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1123 (6th Cir. 1996). Courts typically consider eight factors in determining a likelihood of confusion: "(1) the strength of plaintiff's mark (*i.e.*, how well-known and distinctive it is); (2) the relatedness of the services or goods offered by plaintiff and defendant; (3) the similarity between the marks; (4) evidence of actual confusion; (5) marketing channels used by plaintiff and defendant . . . ; (5) likely degree of purchaser care and sophistication; (7) intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines using the marks." Johnson, 149 F.3d at 502-

03 (citing Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1006 (6th Cir. 1991)). But before reaching any of these enumerated factors, courts must "first ask whether the defendant is actually using the plaintiff's trademark to identify the source of the defendant's product." Vanderbilt Univ. v. Scholastic, Inc., 382 F. Supp. 3d 734, 751 (M.D. Tenn. 2019) (citing Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 610 (6th Cir. 2009)).

Plaintiffs argue there is a genuine issue of material fact precluding summary judgment on its false designation of origin claim. To support this notion, they offer circumstantial evidence, including: 1) that there are "a significant number of" missing SkyTracker enclosures that were ordered by ComTech but never shipped to Plaintiffs; and 2) that the number of missing units "roughly match[es] the number of other parts purchased by and shipped to" a company that Plaintiffs argue ComTech set up to "pirate" NASCorp's business name and reputation. (Doc. Nos. 68 at 9-10; 69 at ¶¶ 9-14). ComTech counters that Plaintiffs' argument relies on assumptions for which it provided no evidence. Moreover, ComTech proffers unrebutted testimony by Sinotech CEO, Tim Armstrong, and ComTech executive, Lajuana Johnson, to show that missing component parts is commonplace in the manufacturing industry. (Doc. Nos. 65-7; 69 at ¶¶ 9-12). In particular, Ms. Johnson testified that manufacturers are often "required to buy more product than what [they're] required to assemble." (Doc. Nos. 65 at 17-18; 65-7).

After reviewing the record in the light most favorable to Plaintiffs, the Court finds that a reasonable juror simply could not determine that ComTech pirated SkyTracker units and violated the Lanham Act based on missing enclosures or parts alone. Logically, it does not follow that missing property equates to existing property. Indeed, Plaintiffs themselves admit that they have never actually seen any pirated SkyTracker units, nor do they know where such units could be in operation. (Doc Nos. 65-6; 69 at ¶¶ 68-69). Nor does the record reflect any evidence supporting

10

the claim that the unaccounted-for enclosures were used to build actual SkyTracker devices. (Doc. Nos. 65-7; 65-10; 72 at ¶ 12). And Plaintiffs' reliance on invoices for the extra enclosures—which were dated prior to the 2013 Agreement—is inapposite, as the Court has already ruled that any claim prior to that agreement has been "waived and discharged." (Doc. No. 35). It would be no small leap for a juror to infer that merely because extra component parts exist, which is a common occurrence in the manufacturing industry, that ComTech undertook a massive scheme to pirate NASCorp's word mark or Plaintiffs' business as a whole. Here, there is simply no evidence to support the notion that ComTech was using Plaintiffs' word marks at all, let alone that they were using them to identify the source of the SkyTracker product. See Vanderbilt, 382 F. Supp. 3d at 751. The Court need not even reach the eight-factor test used to assess a likelihood of confusion, as there is no evidence ComTech did anything to pirate SkyTracker devices, let alone cause confusion. See Sazerac Brands, LLC v. Peristyle, LLC, 892 F.3d 853, 859 (6th Cir. 2018) (noting that "only if the plaintiff clears this threshold test do we proceed to the conventional likelihood-of-confusion analysis"). Accordingly, the Court finds that ComTech is entitled to summary judgment on its false designation of origin claim.

## C. CONCLUSION

For the foregoing reasons, ComTech's Motion for Summary Judgment (Doc. No. 64) will be granted.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE